UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEERFIELD MFG., INC.,

      Plaintiff,

v.                                                      Case No. 04-73934

JEM INVESTMENT PROPERTIES;              HONORABLE AVERN COHN
SOLAR STAMPING CO.; AND
NOVA PRESS, LLC,

      Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. Introduction**

      This is a contract case involving application of the Uniform Commercial Code

(U.C.C.).[1]  The parties are as follows:

•    Plaintiff Deerfield Manufacturing, Inc. (Deerfield) is a metal stamping business

     which uses large presses in the manufacturing of its product line.

•    Defendant/Cross-Plaintiff JEM Investment Properties, LLC (JEM) buys, sells, and

     leases large presses, among other things.

•    Defendant/Cross-Plaintiff Solar Stamping Company (Solar) uses large presses,

     which it leases from JEM.  JEM and Solar are under common ownership.[2]

---

[1]Jurisdiction is based on diversity of citizenship and because the amount in
controversy exceeds $75,000.  28 U.S.C. § 1332.

[2]JEM and Solar are represented by the same counsel and filed all documents
with the Court as a single party.  At times they will be referred to jointly as JEM and be
treated as a single party in considering the parties' motions.

• Defendant/Cross-Defendant Nova Press, LLC (Nova) specializes in the purchase and sale of used industrial machinery, including large presses, and also acts as a "rigger," which involves the disassembly, transportation and reassembly of used commercial machinery.

• Cross-Defendant Francis Blake (Blake) is the owner of Nova. JEM's counter-claim against Blake and Nova are not relevant to the disposition of the present motions.

Involved here are competing claims of ownership to two large presses. Deerfield claims to have purchased the presses from Nova, JEM says it obtained title to the Presses by default of Nova. Solar is using the presses under a lease with JEM. Deerfield is suing JEM and Solar for damages and/or possession of the presses (Count I). Deerfield also is suing Nova for damages (Count II) for the failure to deliver the presses it says it purchased from Nova for $350,000; Nova still has the $350,000 Deerfield paid for the presses. Solar currently has the presses.[3]

Before the Court are Deerfield's and JEM's cross motions for partial summary judgment as to ownership and possession of the presses (Count 1). For the reasons that follow, Deerfield's motion is DENIED and JEM's motion is GRANTED.

---

[3] JEM's cross-claims for fraud, breach of contract, and promissory estoppel against Nova and Blake are not important in considering the present motions.

2

## II. Background[4]

### a. Nova and JEM's Negotiations.

On September 26, 2003, Blake purchased a manufacturing facility ("the Manufacturing Facility") which included real estate, fixtures and specified machinery. Soon thereafter, Nova was re-designated as the purchaser of the Manufacturing Facility. Two large presses were part of the purchase, specifically a 1,000 ton USI Clearing SSDC Press, Model S4-1000-120-72, Serial No. 10-4406, and a 1,200 ton USI Clearing SSDC Press, Model 1200-12-60, Serial No. 10-4115 ("the Presses").

After acquiring the Manufacturing Facility, in October, 2003, Nova began negotiating with JEM for the sale of the Manufacturing Facility and most of its contents to JEM. The Presses were excluded from the negotiations between JEM and Nova from the beginning.[5] Included in the proposed contract between Nova and JEM was a provision that the excluded Presses had to be removed from the Manufacturing Facility within 30 days of closing, or title to them would pass to JEM. At Nova's request, a later version of the proposed contract gave Nova 90 days to remove the Presses from the Manufacturing Facility before title would pass to JEM. Negotiations between Nova and JEM continued through November and into December of 2003. On December 5, 2003,

---

[4] The background is gleaned from the parties' papers.

The parties followed the Court's summary judgment motion practice guidelines but for the following exception: neither Deerfield nor JEM/Solar highlighted relevant portions of their exhibits  For the Court's motion practice guidelines, see http://www.mied.uscourts.gov/_practices/cohn/motion/htm.

[5]The reason for excluding the Press from the negotiations is not certain. JEM claims that it considered the Presses to be overpriced by Nova, therefore it did not wish to purchase them.

3

Nova and JEM signed a final Real Estate Purchase Contract ("the final Purchase Contract") for a purchase price of $1,575,000 ($1.1 million for the real estate and facility and $475,000 for machinery), including the provision that the Presses had to be removed by Nova within 90 days of closing or title would pass to JEM.  Nova and JEM closed on the sale on February 4, 2004.  The closing documents also included the provision that title to the Presses passed to JEM if they were not removed within 90 days of closing.  JEM did not charge a storage fee during this time.

### b.  Nova and Deerfield's Negotiations.

Beginning on October 21, 2003, while engaged in the negotiations with JEM, a Nova salesperson attempted to sell the Presses to Deerfield.  On November 18, 2003, before Nova and JEM had agreed to a contract for sale of the Manufacturing Facility, Deerfield agreed to purchase the Presses from Nova for $350,000, a discounted price. Deerfield issued a purchase order to Nova for the Presses with the following delivery terms: "FOB truck loaded - draw steel Plymouth, Detroit, MI preferred delivery date mid to late December."  Nova issued an invoice to Deerfield for the Presses with the following delivery terms: "Nova Press will dismantle and load presses on trucks provided by Deerfield.  Preferred loading date is mid to late December, 2003."  Deerfield wired the purchase price of $350,000 to Nova on November 19, 2003.  After wiring the money, Deerfield asked Nova whether the delivery could be delayed, as Deerfield did not need the Presses immediately.  Nova agreed to the delayed delivery.   Deerfield did not pay rent during this period.

4

**c. Deerfield Does Not Learn that it Needs to Remove the Presses by Certain Date.**

Blake did not tell Nova's salesperson negotiating the sale to Deerfield about the provision in the proposed Purchase Contract which shifted title of the Presses to JEM if they were not removed from the Manufacturing Facility within 90 days of closing. Blake and Nova did not inform Deerfield that Nova had an obligation to remove the Presses from the Manufacturing Facility within 90 days of the February 4, 2004, closing date or title to the Presses would pass to JEM under the final Purchase Contract. The Presses needed to be removed before May 5, 2004, under the final Purchase Contract; they were not removed.

**d. JEM and Nova Dispute What the Other Knew and Did before the May Deadline.**

The parties dispute what JEM and Solar knew about the Presses before the closing and during the 90 days following the closing. Blake testified that he expressly informed JEM before closing on the Manufacturing Facility that the Presses had been sold to Deerfield. Blake also testified that he telephoned JEM/Solar on multiple occasions prior to May 5, 2005, to arrange for removal of the Presses, but never received a return phone call, suggesting that JEM was trying to prevent Nova from removing the Presses. Before May 5, 2004, JEM says Nova never communicated in writing with JEM about the removal of the Presses, that JEM received and returned some of Blake's calls, and that JEM only received a voice message from Blake relating to another matter, not the Presses. Thus, the time, frequency, and substance of Blake and JEM's communications about the Presses is disputed.

5

**e.  Deerfield Attempts to Get the Presses.**

In early 2004, Deerfield and Nova discussed Deerfield taking possession of the
Presses, but made no plans.  Finally, in September, 2004, Deerfield was ready to take
possession of the Presses and contacted Nova, who still had Deerfield's $350,000.
Removal of the Presses is not an easy task.  Blake told Deerfield to contact JEM
directly to remove the Presses from the Manufacturing Facility.  By September, about
four months after the 90 day deadline for removal had passed, JEM had invested
money into the Presses to make them usable and had begun using them.  Deerfield
contacted JEM about the Presses; JEM says it was surprised to hear of Deerfield's
interest in the Presses, given that JEM believed it had already taken title to them.  JEM
did not give Deerfield possession of the Presses.  Deerfield claims the Presses have a
$700,000 value as of now.  At oral argument, Deerfield said it prefers possession of the
Presses over damages, depending on the condition of the Presses.  Though uncertain,
Nova appears to be solvent.

**III. Discussion**

**A. Legal Standard**

Summary judgment will be granted when the moving party demonstrates that
there is "no genuine issue as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of
material fact when "the record taken as a whole could not lead a rational trier of fact to
find for the non-moving party."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

6

U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

**B. Analysis.**

**1. Title to the Presses.**

**a. Deerfield and JEM's Conflicting Claims.**

Deerfield moves for summary judgment against JEM/Solar, specifically claiming it

is the owner and entitled to possession of the Presses under U.C.C. § 2-401(3)[6] and

can either compel delivery by JEM/Solar, and/or recover damages from JEM/Solar.  An

action for possession is allowed under M.C.R. 3.105 (c) and F.R.C.P. 8, the

requirements of which Deerfield has followed.

In its Counter-Motion for Partial Summary Judgment, JEM asks that, as a matter

of law, the Court declare that: (1) Deerfield never acquired title under U.C.C. § 2-401,

(2) Nova retained voidable title after receiving Deerfield's payment, and (3) JEM

purchased the Presses from Nova "for value." JEM argues that only whether JEM was a

"good faith purchaser for value" is a disputed question of material fact on the record as it

stands.

**b.  Deerfield Says it Acquired Title to the Presses on November 19, 2003.**

Deerfield claims title to the Presses as a matter of law.  Deerfield supports the

claim by noting that Nova says it contracted for the sale of the Presses to Deerfield, that

Deerfield paid Nova in full, and that Nova says it transferred title to the Presses to

Deerfield on November 19, 2003.  This result depends on the application of U.C.C. § 2-

401(3), and the contention that delivery of the Presses was not required for title to

_____

[6] Michigan has adopted all relevant portions of the U.C.C.   Unless otherwise
indicated, all references are to the U.C.C. instead of the M.C.L. to simplify citations.

transfer.  U.C.C. § 2-401(3) states that, unless otherwise agreed, if delivery is to be made without moving the goods," and "if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."  Deerfield argues that title passed from Nova to Deerfield because their contract did not require movement of the goods.  Under the U.C.C., a subsequent "purchaser of goods acquires all title which his transferor had or had power to transfer."  U.C.C. § 2-403(1).  Thus, Deerfield says that JEM could not acquire any title from Nova as part of the subsequent sale of the Manufacturing Facility because title had passed to Deerfield.

The rule on subsequent purchasers further states that "a person with voidable title has power to transfer a good title to a good faith purchaser for value."  U.C.C. § 2-403(1).  Deerfield makes two arguments as to why this part of the statute does not apply.[7]  First, Deerfield notes that this section only applies where a seller has "voidable title," and, since Nova had no title, it is inapplicable.  Second, Deerfield claims that the agreement between Deerfield and Nova to leave the Press with Nova constitutes a bailment of the Presses.  Deerfield cites two 100-year old Michigan Supreme Court cases for the principles that (1) a bailee (Nova) had no apparent authority to sell and pass title to the property of the bailor, and (2) the bailor (Deerfield) has the right to repossess property in the custody of a third party (JEM) even if the third party purchased the property from the bailee in good faith and without notice of the bailor's

_____

[7] Deerfield preemptively argued that Nova's failure to remove the Presses on Deerfield's account is not an "abandonment" of the property.  This argument is not addressed because JEM does not claim the Presses were abandoned by Deerfield.

9

title.

### c.  JEM says that Deerfield did not Acquire Title on November 19, 2003.

JEM argues that U.C.C. § 2-401(2) applies to Deerfield and Nova's contract for the Presses.  Under U.C.C. § 2-401(2), "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."  U.C.C. § 2-401(2)(a) provides that "if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment."    JEM argues that Nova had voidable title to the Presses after November 19, 2003, because movement of the goods was required, and that, under U.C.C. § 2-403(1), JEM was a good faith purchaser for value at the time Nova sold the Manufacturing Facility to JEM.  Because Nova still had to complete performance for Deerfield by disassembling and loading the Presses onto trucks provided by Deerfield, actions that involved moving and loading the Presses, JEM argues that Nova still had voidable title,[8] making § 2-401(3)(b) inapplicable.  JEM notes that Deerfield's purchase order was silent as to passage of title and included the phrase "FOB truck loaded."  JEM also notes that the Nova invoice also was silent as to title transfer and provided that "Nova Press will dismantle and load presses on trucks provided by Deerfield."  JEM argues that each contractual phrase proves that Nova had not completed its performance as to the movement of the Presses, meaning U.C.C. § 401(2) governs the transaction.

---

[8] JEM claims Nova's title is "voidable" because title is subject to the contract with Deerfield, on which the parties had not completed performance.

### d.  Which U.C.C. Section Applies.

The decision in this case turns on which section of the U.C.C. applies.  If Nova has to move the goods to complete performance regarding delivery to Deerfield, then U.C.C. § 2-401(2) applies.  Comment 4 to U.C.C. § 2-401 explains that the test as to whether § 2-401(2) or § 2-401(3) applies is to determine when the "seller has finally committed himself in regard to specific goods.  Thus in a 'shipment' contract he commits himself by the act of making the shipment.  If shipment is not contemplated subsection (3) turns on the seller's final commitment, i.e., the delivery of the documents or the making of the contract."  Deerfield argues that when the seller maintains possession of the goods for the buyer's benefit, no delivery is required and the time and place of contracting dictates who holds title.

Deerfield cites two cases to support its argument.  In Russell v. Transamerica Ins. Co., 116 Mich. App. 93 (1982), a buyer of a boat made a 20% down payment and the seller retained possession of the boat to perform some repairs.  The boat was destroyed before the buyer acquired possession of it.  The court ruled that title to the boat passed to the buyer when identified by the seller because no documents of title were to be delivered and delivery did not require moving the boat.  Russell, 116 Mich. App. at 96-97.  In Integrity Ins. Co. v. Marine Midland Bank, 396 N.Y.S. 2d 319 (Sup. Ct. N.Y. 1977), a buyer signed a contract to purchase a mobile home and the seller did not install it while the buyer looked for a lot on which to keep it.  Less than a month later the buyer had found a lot, but before the seller delivered the mobile home to the buyer, a bank claimed a security interest in the mobile home.  The Integrity court ruled that no delivery was needed for a buyer to take title to a mobile home where the buyer had paid

11

the purchase price and delivery was delayed for the buyer's convenience.

However, factual distinctions between the above cases and this case make them inapplicable.  In <u>Russell</u>, the buyer could have possessed the boat, a consumer good, without the seller physically moving the boat.  The court must contrast items of "considerable bulk" with those that a "customer can drive away;" "where property is of a nature which requires special handling to enable the buyer to take possession, § 2-401(3) is inapplicable and § 2-401(2), requiring physical delivery, does apply." <u>Mechanics Nat'l Bank of Worcester v. Gaucher</u>, 386 N.E.2d 1052, 1056 (Mass. App. Ct. 1979).  In this case, the Presses were personalty affixed to realty, which required considerable labor to deliver that Deerfield could not perform on its own.  In fact, the Presses needed to be lifted by crane through the roof of the building to be removed from the building.

In <u>Integrity</u>, the court relied on "constructive delivery" to determine that title had passed to the purchaser, even though installation of the mobile home had not occurred, because the purchaser delayed delivery for a just a few weeks to find a location for the mobile home.  Also, the claimed superior interest was a bank's security interest, not a subsequent buyer.  In this case, even after spending $350,000, Deerfield allowed approximately 10 months to pass before trying to get the Presses for which it had paid, during which time it paid no rent to store the Presses.

The use of the term "F.O.B." in Deerfield's purchase order also distinguishes <u>Russell</u> and <u>Integrity</u> from this case and further suggests that § 2-401(2) applies.  F.O.B. means "free on board" and is a delivery term defined in U.C.C. § 2-319.  "F.O.B." is typically followed by a named place, and "when the term is also F.O.B. vessel, car or

12

other vehicle, the seller must in addition at his own expense and risk load the goods on board."  U.C.C. § 2-319(1)(c).  On Deerfield's purchase order, the named place is "truck loaded."  Nova's invoice provides that it would "dismantle and load the presses."  It seems clear that the parties contemplated delivery of the Presses to complete performance under the contract.  See Crocker Nat'l Bank v. Ideco Division of Dresser Industries, Inc., 660 F. Supp. 186 (S.D.Tx 1987)(use of F.O.B. manufacturer and hold for shipping instructions on invoices was evidence that delivery of drilling rigs was required); Warrior Tombigbee Transportation Co. v. 5,775.674 Net Tons of Coal, 570 F.Supp. 1405 (S.D.Ala. 1983)(for a sale of coal "F.O.B. barge," title to the coal passed to buyer upon loading of each barge load).

The case upon which JEM relies, Sam & Mac, is also factually distinguishable from this case.  Sam & Mac, Inc. v. Treat, 783 N.E.2d 760 (Ind. Ct. App. 2003) (title did not pass to the buyer because delivery to the buyer's home was clearly required under the contract).  However, the terms of the purchase order and invoice, and the fact that Deerfield could not move the Presses itself, establishes that U.C.C. § 2-401(2) governs the Nova-Deerfield transaction, meaning that Deerfield did not have title to the Presses as of November 19, 2003.  If Deerfield did not have title to the Presses, leaving them in Nova's control could not have been a bailment.

### 3.  Whether Nova & JEM's Contract Meets the Requirements of U.S.C. § 2-403(1).

Under U.C.C. § 2-403(1), if Nova had "voidable title" it could transfer good title to the Presses to a good faith purchaser for value.

13

### a. Whether Nova had Voidable Title.

Deerfield claims Nova had no title, not voidable title, and that voidable title exists when a purchaser acquires title by deceit or fraud. U.C.C. §§ 2-403(1)(a)-(d). Deerfield also notes that possession alone does not create voidable title, that Nova does not claim to have retained any title after November 19, 2003, and that Nova did not warrant title to the Presses in the Purchase Contract with JEM. JEM argues that "voidable title" exists when under pre-Code law the contract would be subject to avoidance as between the parties. 3A R. Anderson, Uniform Commercial Code § 2-403:50 (3d ed. 1983). Title never passed to Deerfield because movement of the goods was required, and the final Purchase Contract and closing documents transferred title to the Presses to JEM if they were not removed from the Manufacturing Facility within 90 days, thus, JEM argues that Nova could have avoided the contract with Deerfield.

Someone who obtains title by fraud or some nefarious way has voidable title, but voidable title does not exist exclusively in these circumstances. Voidable title is a "murky concept" and the U.C.C. does not define the phrase, but "in general voidable title passes to those who lie in the middle of the spectrum that runs from best faith buyer at one end to robber at the other." 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 3-12 (4th ed. 1995). Though no analogous case exists, Nova must have had voidable title. Title must be held by someone. If Deerfield did not acquire title, Nova must have retained title subject to Deerfield's interest pending final performance on the contract. Both Nova and Deerfield still had to perform under the contract, meaning reformation and avoidance of the contract was possible. All of this

14

shows that Nova had voidable title.

### b.  Whether JEM Paid Value.

JEM claims it paid value.  "Value" is defined, in part, as "any consideration sufficient to support a simple contract."  U.C.C. § 1-201(44)(d).  Under the contract with Nova, JEM paid $1,575,000 to Nova for the Manufacturing Facility, $475,000 of which was for machinery specifically.  JEM did not receive rent for storing the Presses during the 90 day period after closing on the Manufacturing Facility.  JEM took title to the Presses under the contract if they were not removed within 90 days of closing.  Therefore, JEM argues, they paid value for the Presses.  Deerfield contends that whether JEM paid value is a disputed question of material fact, but does not explain why.  Deerfield could claim that the $475,000 paid for machinery was for the included, not the excluded, machinery in the final Purchase Contract, suggesting that no value was paid for the excluded Presses.  It seems clear that JEM paid value for the Presses, at the very least by not charging rent for storing the Presses during the 90 days after the closing.  However, the amount paid for the Presses may be relevant to JEM's good faith.  1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 3-12 (4th ed. 1995) (almost every purchaser gives value, "the amount given, however, may be relevant to the purchaser's good faith").

### c.  Whether JEM Acted in Good Faith.

Whether JEM acted in good faith is unclear, and JEM and Deerfield both believe that this issue must be resolved at trial to determine whether JEM took title to the

15

Presses, or is liable to Deerfield.  The Presses were not included in the sale of the Manufacturing Facility, making them available for sale to Deerfield.  Deerfield paid Nova for the Presses before JEM and Nova finalized the Purchase Contract for the Manufacturing Facility.  Thus, it seems clear JEM knew Nova had sold the Presses to someone before closing on the Manufacturing Facility.  Despite this, Nova and JEM included a provision in their contract stating that the Presses would pass to JEM if they were not removed within 90 days of closing.

It is unclear what, when, and how often Blake and Nova tried and failed to communicate to JEM in order to remove the Presses before title passed to JEM under the Purchase Agreement.  Blake says Nova made efforts to remove the Presses, and JEM says Nova did not.  The closing occurred on February 4, 2004.  Nova failed to remove the Presses within 90 days.  JEM did not pay any more than the $475,000 paid for the machinery under the final Purchase Contract, and nothing specifically for the Presses, though they did not charge rent for storing them.  JEM and Nova disagree as to whether Nova attempted to remove the Presses by contacting JEM.  Questions of good faith are subjective and a question of material fact exists, therefore summary judgment on this issue is inappropriate.  Karibian v. Paletta, 122 Mich.App. 353 (1983).

### 4.  JEM's Claim to be a "Buyer in the Ordinary Course of Business" from Nova is Moot.

In the alternative, JEM argues that if Deerfield did acquire title to the Presses on November 19, 2003, JEM subsequently acquired title from Nova under an entrustment theory, with JEM being a "buyer in the ordinary course of business."  U.C.C. § 2-403(2).

16

This argument is no longer relevant because Deerfield did not acquire title to the Presses.

### 5.  Burden of Proof

JEM and Deerfield dispute where the burden of proof properly lies with regard to whether JEM was a good faith purchaser for value.  JEM asserts that Deerfield carries the burden of proof at trial to disprove this issue, whereas Deerfield argues that, as an element of an affirmative defenses, JEM carries the burden of proof at trial on this issue. Deerfield is correct, though both parties carry a burden of producing evidence at trial in order to succeed.

### 6.  Conclusion.

Deerfield remains free to challenge JEM's good faith and/or recover damages from Nova.  The Court sympathizes with Deerfield if it is disadvantaged and JEM enriched by Nova's action.  However, be that as it may, the U.C.C. controls the rights of the parties and its rules regarding determination of title must be followed.

SO ORDERED.


Dated:  October 11, 2005                    s/Avern Cohn_____
                                            AVERN COHN
                                            UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 11, 2005, by electronic and/or ordinary mail.

                                            s/Julie Owens_____
                                            Case Manager
                                            (313) 234-5160

17