UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEERFIELD MANUFACTURING, INC.,

      Plaintiff,

                                      Case No. 04-73934
-vs-                               Hon:  AVERN COHN

JEM INVESTMENT PROPERTIES, LLC,
SOLAR STAMPING CO., and
NOVA PRESS, LLC,

      Defendants,

and

JEM INVESTMENT PROPERTIES, LLC,
and SOLAR STAMPING COMPANY,

      Defendants/Cross-Plaintiffs,

-vs-

NOVA PRESS, LLC and FRANCIS BLAKE,

      Defendants/Cross-Defendants.

_____/

## **DECISION**

### I.  Introduction and Decision

This is a commercial dispute involving the ownership of two (2) large stamping presses.  The background generally of the case, including the parties and the nature of the dispute are described in the Opinion and Order Denying Plaintiff's Motion for Partial Summary Judgment and Granting in Part Defendants' Counter Motion for Partial Summary

Judgment entered October 14, 2005 (Opinion and Order).[1]

The case was tried to the Court over five (5) days earlier this year.

After careful consideration of the evidence at trial, testimonial and documentary, and the applicable law, the Court finds for plaintiff, Deerfield Manufacturing, Inc. (Deerfield). This Decision constitutes the findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).

## II.  Claims of the Parties

The claims of the parties are generally described in the Joint Final Pretrial Order filed February 2, 2006 as follows:[2]

### A.  Plaintiff

Plaintiff Deerfield Manufacturing, Inc. ("Deerfield") alleges a breach of contract claim against Defendant Nova Press, LLC ("Nova"). Nova agreed to sell two presses (the "Presses") to Deerfield for $350,000.00. Deerfield paid the $350,000.00 to Nova, but Nova failed to provide the Presses. Therefore, Nova has breached the contract between the parties and proximately caused Deerfield to suffer damages.

Deerfield's claim against Defendants JEM Investment Properties, LLC ("JEM") and Solar Stamping Company ("Solar") is for claim and delivery pursuant to MCLA §600.2920 and MCR §3.105. Solar possesses the Presses rightfully owned by Deerfield, but has failed and refused to surrender the Presses despite demand to do so. Assuming the Presses are in the same or better condition as when Deerfield paid Nova for the Presses, then Deerfield seeks possession of the Presses.

---

[1] Care should be taken in reading the Opinion and Order. A number of the facts as recited were initially viewed as not presenting a genuine issue at trial. Such was not the case when it came to the trial.

[2] It should be noted that the Nova-JEM/Solar dispute regarding the water bill was settled during trial and is not part of this decision.

If the Presses are not in the same or better condition, then Deerfield seeks recovery from JEM/Solar of the fair market value of the Presses.

## B.  Defendants

### 1.  JEM and Solar

As to Deerfield, JEM/Solar claim that JEM was a good faith purchaser for value of the Presses, and that title to the Presses passed to JEM on May 6, 2004, pursuant to the terms of its agreement with Nova.  Deerfield has never properly taken title to the Presses and its claims are further barred by the equitable doctrine of laches since Deerfield sat on its rights for approximately ten months.

As to Cross-Defendants Nova and Francis Blake, JEM/Solar claim that: (a) Nova breached its contract by failing to pay $13,000.00 in water bills which Solar was subsequently required to pay in order to avoid a water shutoff; (b) Nova breached its contract by failing to disclose it had already sold the Presses contrary to the express terms of the contract; and (c) Nova and Blake perpetrated a fraud by failing to disclose that the Presses were previously sold contrary to representations which they made and which were relied upon.

### 2.  Nova and Francis Blake

Nova and Francis Blake claim that Nova sold the Presses to Deerfield and informed JEM/Solar of the sale of the Presses. On several occasions both before and after the sale of the industrial facility to JEM, Nova informed JEM/Solar that the Presses had been sold.

Nova's failure to remove the Presses within the 90 days provided for by the Real Estate Purchase Contract was the result of two factors: (1) Deerfield did not ask for delivery of the Presses until after the 90 day period had expired; and (2) based on (a) Nova's knowledge of standards and practice in the industrial press re-sale business time was not of the essence with respect to removal of the machines from JEM/Solar's premises; (b) JEM/Solar's knowledge that the Presses were not included in the Real Estate Purchase Agreement, but were, in fact, sold to another company; and (c)

3

the lack of any demand by JEM/Solar that Nova remove the Presses, Nova did not believe that time was of the essence with respect to the removal of the machines.

Blake was not a party to any of the transactions at issue in this matter and is not individually liable to JEM/Solar.

### III.  The Trial

### A.

### 1.

The witnesses at trial in person and by deposition were:

• Howard Ice, Jr., chief executive officer of Deerfield.

• Francis Blake, owner of Nova.

• Ryan Messacar, a Nova sales person and son-in-law of Francis Blake.

• Greg Kiesgen, a friend of Blake's and owner of a stamping plant.

• James E. McClain, owner of JEM/Solar.

• Jerry Stewart, an executive employee of JEM/Solar.

• Charles Dallier, an employee of Davis Tool & Manufacturing Co., the original owner of the presses and then Nova.

• George Rawly, an employee of Davis and then Nova.

• Joseph Carter, an employee of Deerfield.

• Jeremy Lumbrezer, an employee of Deerfield.

### 2.

Ice negotiated the purchase of the two (2) presses by Deerfield.

Blake negotiated the purchase of the Davis plant and equipment by Nova, and the sale of the two (2) presses to Deerfield.  Blake also negotiated the sale of the Davis plant

4

and equipment, exclusive of the two (2) presses to JEM/Solar.

Messacar began the negotiation of the sale of the Davis plant and equipment, exclusive of the two (2) presses to JEM/Solar. He also began negotiation of the sale of the two (2) presses to Deerfield.

McClain, the owner of JEM/Solar, negotiated the purchase of the Davis plant and equipment exclusive of the two (2) presses by JEM/Solar.

Kiesgen visited the Davis plant with Blake prior to the purchase by JEM/Solar.

Stewart managed production at the plant for JEM/Solar.

Dallier worked for Davis in the plant and stayed on for a while after its purchase by Nova. He worked there during JEM/Solar's early production.

Rawley worked for Davis in the plant, and stayed on for a while after its purchase by Nova. He worked there during JEM/Solar's early production.

Carter worked for Davis, and was familiar with the purchase of the two (2) presses and problems of disassembly, removal and reassembly.

Lumbrezer worked for Davis and handled the financial aspect of the purchase of the two (2) presses.

**B.**

Exhibits in evidence consisted of equipment lists, faxes, e-mails, drafts of purchase agreements, closing documents, invoices and photographs.

**C.**

The findings of fact which follow because of conflicts in testimony are based in part on an assessment of the credibility of the witnesses. McClain's testimony was not

5

particularly credible.  He denied much of what should have been obvious to him.[3]

The findings also required inferences to be drawn from the testimony and documentary evidence.

## IV.  Findings of Fact

The following are the findings of fact stated in separate parts.

### A.  Nova's Purchase of Davis

1.      Nova, owned by Blake, was in the business of buying and selling industrial machinery.  Blake was its principal salesperson; Massacar, Blake's son-in-law, also worked for Nova as a salesperson.

2.      On September 26, 2003, Blake, on behalf of Nova entered into an agreement with Davis to buy its Detroit Plymouth Road stamping plant, including real estate, machinery and equipment.  The purchase included the two (2) presses.  Nova intended to resell the plant and its machinery and equipment either in the aggregate or piecemeal, a fact known to Davis.  Nova did not make a down payment.  The agreement allowed Nova to sell the machinery and equipment piecemeal provided the amount it received was placed in escrow.

3.      Blake and Messacar immediately set about looking for purchasers for the plant, machinery and equipment.  The effort was directed toward a sale in the aggregate or piecemeal.

---

[3] We tell a jury in a criminal case no one can avoid responsibility for a crime by deliberately ignoring the obvious.  See Sixth Circuit Pattern Jury Instructions, §2.09 (Deliberate Ignorance).  This same rule applies in civil cases.

6

4.    The Davis sale of the plant machinery and equipment to Nova closed on February 4, 2003, simultaneous with the Nova sale to JEM/Solar of the plant, machinery and equipment, exclusive of the two (2) presses which had been sold by Nova to Deerfield prior to the closing.  Nova took possession of the plant prior to closing.

### B.  Nova's Sale to JEM/Solar

1.    JEM/Solar is in the metal stamping business; McClain is its principal stockholder and Chief Executive Officer.

2.    JEM/Solar showed an interest in purchasing the plant and its machinery and equipment after being contacted by Messacar.  JEM/Solar was not interested in purchasing the two (2) presses because of the higher price it would have to pay.  At no time in the Nova-JEM/Solar negotiations were the two (2) presses included in the discussion.

3.    The two (2) presses have a 1,000-ton and a 1,200-ton capacity.  They are very large.  Excluding them from the purchase substantially lowered the price to JEM/Solar.

4.    While Messacar initiated JEM/Solar's interest in the purchase, negotiations were handled by Blake and McClain.

5.    The negotiations between Blake and McClain were protracted.  McClain was not an easy negotiator; Blake was anxious to make the sale.  The contract signed by Nova and JEM/Solar specifically excluded the two (2) presses, and contained a provision requiring Nova to remove them from the plant within ninety (90) days of closing (initially it was 30 days).  The contract also provided that if they were not removed within ninety (90) days, title passed to JEM/Solar.  No representations or warranties relating to the two (2) presses were included in the contract.  Particularly there was no warranty of condition.

6.    JEM/Solar sought assurances in the negotiations that the two (2) presses

7

would be removed within a limited time and that Nova would be responsible for any damages to the plant and any environmental remediation activity incident to their removal, particularly because the two (2) presses were hydraulically operated, and disassembly and removal was a difficult task and would interfere with production.  The components of the two (2) presses had to be removed by a boom crane which lifted them from the plant floor through the roof and onto trucks parked next to the building for transport.

7.     The closing between Nova and JEM/Solar took place on February 4, 2004. Essentially the same provisions regarding the two (2) presses were included in the closing documents that were in the contract of sale.  Particularly, the closing documents contained the following provision:

> EXCLUDED ITEMS
>
> The sale and conveyance described in this Bill of Sale expressly excludes Press #2, a 1200 Ton USI Clearing SSDC Press, 120 inches by 60 inches bed with Rowe feedline, Model No. 1200-120-60, Serial No. 10-4115; Press #4, a 1,000 Ton USI Clearing SSDC Press, 120 inches by 77 inches bed with Littell feedline; 150 Ton Minster OBI (outside); and 32 PT Niagra (outside) Model No. S4-1000-120-72, Serial No. 10-4406 (Collectively, the "Excluded Items").
>
> Except with respect to the Excluded Items, all risk of loss shall transfer to the Purchaser upon Purchaser's taking possession of the Presses and Machinery at the premises.  Purchaser also agrees to pay any and all applicable federal, state and local use, sales and excise taxes which may apply to the sale of the Presses and Machinery (excepting the Excluded Items). * * *
>
> For a period of 90 days after the date hereof, seller shall have reasonable access to the premises during normal business hours to remove the excluded items at seller's sole cost and expense.  Seller shall repair and shall indemnify purchaser from and against any loss or damage to the premises caused by the removal, including all necessary environmental remediation activities incident to the removal of the Excluded

8

Items. In the event seller fails to remove the excluded items or any of them within 90 days of the date hereof, then title f the remaining items shall pass to purchaser and purchaser may use or dispose of such personal property.

8.     The closing documents stated the purchase price was $1,575,000.00. $1,100,000.00 was allocated to real estate and $475,000.00 to machinery and equipment.

9.     On January 14, 2004, JEM/Solar began running production in the plant. JEM/Solar did not use the two (2) presses in production because it knew it did not own them. Employees of Davis who stayed on to assist JEM/Solar in running the plant were under the impression that the two (2) presses had been sold.

10.     There was little direct contact between JEM/Solar after the closing because of Nova's failure to pay an outstanding water bill. McClain was much annoyed with Blake and deliberately did not to have anything to do with him.

11.     The 90 day period following the closing expired on May 4, 2004. During that period no one contacted JEM/Solar about the two (2) presses. In mid-February a rigging company was retained by Deerfield to advise on problems related to disassembly, removal, transfer and re-installation of the two (2) presses. This was no easy task because of their location in the plant, and the difficulty in disassembly and reassembly. The rigging company examined the two (2) presses in the plant.

## C.  Nova's Sale to Deerfield

1.     Deerfield is a manufacturing company in Mason, Ohio, engaged in the stamping business. It uses presses in its production activities. It buys used presses from time to time.

2.     In October, 2003, Deerfield was contacted by Messacar to see if it was

9

interested in purchasing the two (2) presses.  Eventually Deerfield agreed to purchase the two (2) presses from Nova for $350,000.00 cash.

3.      On November 18, 2003, Deerfield sent a purchase order to Nova for the two (2) presses for a price of $350,000.00.  The purchase order stated in part:

> FOB truck loaded – draw steel Plymouth, Michigan.  Preferred delivery mid to late March.

4.      On November 18, 2003 Nova sent an invoice to Deerfield for the two (2) presses at the agreed purchase price which stated in part:

> Nova Press will dismantle and load presses on trucks provided by Deerfield.  Desired loading date is mid December, 2003. Specific date to be determined.

5.      On November 19, 2003 Deerfield sent $350,000.00 to Nova by wire transfer. Nova paid the $350,000.00 to Davis' attorney to be held in escrow to apply on the purchase price of the plant, machinery and equipment.  Davis' contract provided for release of the two (2) presses or receipt of their purchase price.

6.      Neither the purchase order nor invoice stated anything about title to the two (2) presses, insurance, or the condition of the two (2) presses on the date of purchase or at delivery.

7.      Deerfield did not need the two (2) presses initially.  Deerfield and Nova informally agreed that the two (2) presses would remain in the plant until Deerfield called for delivery.  Deerfield had to make substantial changes in its plant before the two (2) presses could be installed.  Disassembly, removal and placement on trucks could take up to three (3) weeks.

8.      When Deerfield's plant was ready for installation of the two (2) presses in

10

September, 2004, Deerfield contacted Blake.  By this time Messacar had left the employ of Nova.  Blake told Deerfield to contact JEM/Solar.

9.      JEM/Solar when contacted by Deerfield told it that JEM/Solar owned the two (2) presses because they had not been removed by May 4, 2004.  This was a surprise to Deerfield.  Deerfield then brought this case.

### D.  The Knowledge of Deerfield and JEM/Solar

1.      Deerfield had no knowledge of Nova's dealings with JEM/Solar.

2.      JEM/Solar had no direct knowledge of Nova's dealings with Deerfield.

3,      Messacar had no knowledge of the details of Blake's negotiations with McClain.

4.      Blake, who had knowledge of Nova's sale of the presses to Deerfield, and Nova's sale of the plant equipment and machinery to JEM/Solar, did not directly inform either Deerfield or JEM/Solar of the sale of the two (2) presses or the sale of the plant and machinery.

5.      There is both circumstantial evidence and direct evidence that JEM/Solar knew that the two (2) presses had been sold at the time it closed with Nova.

     (a)      On November 21, 2003, Nova's attorney wrote JEM/Solar's attorney that Nova had the authority to pass title to three (3) other presses in the plant, exclusive of the two (2) presses.  This assurance was at a time when JEM/Solar was apparently only interested in purchasing some of the machinery in the plant.  The letter included details of Nova's purchase from Davis, stating that $375,000.00 was currently in escrow with Davis' attorney.  Enclosed with the letter was a redacted copy of the Davis/Nova contract.

11

The contract gave Nova the right to sell machinery in the plant provided the proceeds of the sale were placed in escrow with Davis' attorney.  Clearly the $350,000.00 represented the proceeds of the sale of the two (2) presses.

(b)    During the course of Kiesgen's visit to the plant prior to the closing with JEM/Solar, Blake told Kiesgen and McClain the presses had been sold.

(c)    Messacar told Stewart the presses had been sold, particularly during the time Deerfield's riggers visited the plant in February, 2004.

(d)    Messacar, during a visit to the plant before the closing observed an  employee of JEM/Solar removing a part from one of the two (2) presses and told him he could not do so because the two (2) presses had been sold.

(e)    Riggers hired by Deerfield visited the plant on several occasions to study the problems associated with disassembly and removing the presses.

(f)    Both Rawly and Dallier, who were working at the plant between the time JEM/Solar took possession of the plant in January, 2004, and February 2004, the closing, were reasonably sure that the two (2) presses had been sold.

6.    There is circumstantial evidence following the closing on February 4, 2004, that McClain knew or should have known that the two (2) presses had been sold.

(a)    Removal of the two (2) presses was not easy.  They could not be removed in a single day.  According to the Nova-JEM/Solar contract, the

12

two (2) presses had to be removed by May 4, 2004. This meant that notice had to be given JEM/Solar about a month before so that preparations could be made for disassembly and removal through the roof. Once disassembly began, it would take two (2) to three (3) weeks to complete the steps necessary to place them on trucks. McClain knew this.

(b)     JEM/Solar would have received a substantial windfall if title to the two (2) presses passed to it on May 4, 2004. It paid nothing for very expensive machinery.

(c)     Blake said or did nothing to suggest Nova was abandoning the two (2) presses.

(d)     McClain, over a comparatively minor claim, the water bill, cut off any contact with Blake. McClain deliberately avoided Blake and made no inquiry at any time following February 4, 2004 about when the two (2) presses would be removed. This is out of the ordinary conduct for a responsible business person.

## V.  DISCUSSION

As previously stated, the Court finds for Deerfield. This means Deerfield is entitled to possession of the two (2) presses.

### A.  Reasons

Nova when it obtained the release of the two (2) presses from Davis acquired title to them. When it invoiced Deerfield for the $375,000.00 purchase price and Deerfield paid the $375,000.00, Deerfield either acquired title to the two (2) presses outright or had a right

13

to title in the two (2) presses which Nova could defeat by transferring title to a good faith purchaser.  All this is described in the Opinion and Order and need not be repeated.

JEM/Solar was not a good faith purchaser.  By February 4, 2004, it knew Nova had sold the two (2) presses and therefore did not have the right to sell them or transfer title to them, and that a third party had an interest in the two (2) presses.  If this was not clear to JEM/Solar on February 4, 2004, it certainly was clear by May 4, 2004.

JEM/Solar had an affirmative duty to inquire as to the status of the two (2) presses, In the Matter of Kalamazoo Steel Process, 503 F.2d 1218, 1223 (6th Cir. 1974).  JEM/Solar could not deliberately place itself in a position not to know, Kamminsky v. Karmin, 187 AD 488 (1992).  The low price it paid (nothing) put JEM/Solar on notice,  Kanbra v. Paletta, 122 Mich. App.  353, 359 (1983).  The overall nature of the facts warrants against a finding of good faith, Kotis v. Nowicki Jewelry, Inc., 844 SW.2d 920, 925 (1992).

## B.  Remedy

Because JEM/Solar did not acquire an interest in the two (2) presses under its contract with Nova, it had an obligation to surrender them when Deerfield asked for them in September, 2004.   The fact that the May 4, 2004 date had passed was of no consequence.  The Nova-JEM/Solar contract did not diminish Deerfield's right to the two (2) presses.  Whether as a consequence of their not being removed by May 4, 2004 gave JEM/Solar any right of redress from Nova is an open question.  Likewise, the precise nature of the relief to Deerfield in the circumstances also remain to be decided.   If JEM/Solar made any improvements to the presses or was caused any substantive damage by the fact they were not moved by May 4, 2004 (i.e., until September, 2004) is also an open question.

14

## VI.  Conclusion

The Deputy Clerk shall schedule a status conference to discuss further proceedings

relating to relief.  See MCR 3.105.

                                    s/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE


Dated:  September 21, 2006


I hereby certify that a copy of the foregoing document was mailed to the parties of record
on this date, September 21, 2006, by electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5160



S:\OPINIONS\September 2006\Deerfielddecision.wpd

15